UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:20-cv-280-MOC

| DIEDRE L. TRANTER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| KILOLO KIJAKAZI, | ) |  |
| Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 12). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

On November 28, 2017, Plaintiff Diedre Tranter filed an application for disability insurance benefits under Title II of the Act alleging disability beginning June 6, 2017. (Tr. 183–91). The State agency denied Plaintiff's application initially and upon reconsideration. (Tr. 77-88, 90–106). An ALJ held a hearing on September 25, 2019, at which Plaintiff, her attorney, and an impartial vocational expert appeared. (Tr. 34–76). On October 17, 2019, an ALJ issued a written decision finding that Plaintiff was not disabled. (Tr. 14–28). On July 31, 2020, the Appeals Council denied Plaintiff's request for review finalizing the ALJ's decision. (Tr. 1–6). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**II.  Factual Background**

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

-3-

Case 1:20-cv-00280-MOC   Document 16   Filed 10/28/21   Page 3 of 20

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The ALJ found that Plaintiff: (1) worked after the alleged onset date but did not engage in substantial gainful activity (Tr. 16); (2) had the following severe impairments: asthma, joint dysfunction, and osteoarthritis, as well as non-severe impairments and non-medically determinable fibromyalgia, (Tr. 16-21, 24–25); and (3) did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 21–22). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to: perform light work as defined in 20 CFR 404.1567(b)) except she must be permitted to alternate sitting and standing positions every 30 minutes. She can frequently crawl and stoop. She must avoid concentrated

-4-

Case 1:20-cv-00280-MOC   Document 16   Filed 10/28/21   Page 4 of 20

exposure to fumes, odors, dusts, gasses, and poorly ventilated areas. She must also avoid extreme exposure to extreme heat and cold. (Tr. 22). The ALJ determined Plaintiff's RFC based on a thorough review of the evidence. (Tr. 16–28). The ALJ found that (4) Plaintiff can perform her past relevant work as a host/hostess, as this work is not precluded by her RFC. (Tr. 28).

**V.     Discussion**

Plaintiff asserts that (A) the ALJ improperly evaluated the medical opinions from her primary care physician, Tammy Johnston, M.D., and the consultative examiner, Stephen Burgess, M.D., and (B) substantial evidence does not support the RFC because the ALJ did not adopt certain limitations indicated in these opinions. (Doc. 11-1, Pl.'s Mem. in Supp. of Mot. for Summ. J. hereinafter "Pl. Br."). Nevertheless, the evidence supporting the ALJ's decision far exceeds the "more-than-a-mere-scintilla threshold" to survive this Court's deferential review. (See Tr. 16–28).

Thus, Plaintiff fails to establish a legal basis for his claim, but rather invites this Court to impermissibly reweigh the evidence and craft a different RFC merely because she disagrees with the ALJ's decision. See Hays, 907 F.2d at 1456 ("it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence"); accord Smith v. Schweiker, 795 F.2d at 345; Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**A. Plaintiff's contention that the ALJ improperly evaluated the medical opinions from her primary care physician, Tammy Johnston, M.D., and the consultative examiner, Stephen Burgess, M.D.**

As her first assignment of error, Plaintiff contends that the ALJ improperly evaluated the medical opinions from her primary care physician, Tammy Johnston, M.D., and the consultative examiner, Stephen Burgess, M.D. For the following reasons, the Court disagrees.

As an initial matter, the Court notes that, on January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations simplify the agency's policies and reflect changes in the national healthcare workforce and in the manner that individuals receive medical care, while allowing the agency to continue making accurate and consistent disability determinations and decisions under the Act. Id. at 5844. The revised regulations took effect on March 27, 2017, and several important regulatory changes apply strictly to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. § 404.1520c (2017) (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017).[1] For instance, the revised regulations redefine how evidence is categorized specifying five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. See 20 C.F.R. §§ 404.1513(a), 404.1513(a) (2017).[2]

The revised regulations also redefine what the agency considers a "medical opinion." See 20 C.F.R. § 404.1513(a)(2), (3) (2017)[3]; see 81 Fed. Reg. at 62,562. Of significance here, the

---

[1] See also Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,578 (proposed Sept. 9, 2016) (explaining the proposed implementation process).

[2] Compare with 20 C.F.R. § 404.1512(b)(1) (2016).

[3] For claims filed by adults on or after March 27, 2017:

> A medical opinion is a statement from a medical source about what you can still do despite
> your impairment(s) and whether you have one or more impairment-related limitations or
> restrictions in the following abilities: . . .
> (i) Your ability to perform physical demands of work activities, such as sitting, standing,

-6-

revised regulations alter how the agency considers medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017, as discussed further below. See 20 C.F.R. § 404.1520c (2017). When evaluating the opinion evidence for claims filed on or after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering five regulatory factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c) (2017). Of the five factors, the ALJ will explain how the ALJ considered the

---

walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
(ii) Your ability to perform mental demands of work activities, such as understanding;
remembering; maintaining concentration, persistence, or pace; carrying out instructions; or
responding appropriately to supervision, co-workers, or work pressures in a work setting;
(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other
senses; and
(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (2017). By contrast, the prior regulations and the regulations that apply to claims filed before March 27, 2017, provide that statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairment(s), including the claimant's symptoms, diagnosis, and prognosis, are considered "medical opinions." 20 C.F.R. § 404.1527(a)(2) (2016); id. at § 404.1527(a)(1) (2017).

factors of supportability and consistency, which are the two most important factors in determining persuasiveness. 20 C.F.R. § 404.1520c(b)(2) (2017).

Plaintiff asserts that the ALJ's evaluation of the medical opinions from (1) her primary care physician, Dr. Johnston, and (2) the consultative examiner, Dr. Burgess, was improper. Nevertheless, the ALJ properly evaluated the persuasiveness of these opinions and explained the supportability and consistency of these opinions based on the entire evidentiary record, as discussed below. When examining the evidentiary record, the ALJ observed that Plaintiff's work activity during the relevant period, benign physical examination findings, and imaging studies in conjunction with her conservative course of treatment do not suggest disabling symptoms and limitations. (Tr. 16–27). By ignoring the ALJ's discussion of the evidence that precedes the opinion evaluation, Plaintiff erroneously assumes that the ALJ's analysis examining the evidence does not extend to his opinion evaluation.

It is well established the ALJ is not required to repeat his analysis with respect to every finding and sub-finding in the decision. "[T]he ALJ need only review medical evidence once in [the] decision." See McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002). Although an explicit explanation from the ALJ when evaluating medical opinions is helpful, "the rationale can be arguably inferred from the ALJ's review of [the] medical records." Thompson v. Berryhill, No. 4:18-CV-133-FL, 2019 WL 2980030, at *6 (E.D.N.C. Apr. 22, 2019) (finding the ALJ's prior review and discussion of the medical records adequately identified the evidence the ALJ refers to when stating that a doctor's opinion lacks evidentiary support from the record as a whole), report and recommendation adopted sub nom. Thompson v. Saul, No. 4:18-CV-133-FL, 2019 WL 2932736 (E.D.N.C. July 8, 2019). Moreover, the Fourth Circuit has held that an ALJ's opinion evaluation "generally will not be disturbed absent some indication that the ALJ has dredged up

-8-

Case 1:20-cv-00280-MOC   Document 16   Filed 10/28/21   Page 8 of 20

'specious inconsistencies.'" Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). Therefore, the ALJ properly evaluated the medical opinions from Dr. Johnston and Dr. Burgess.

**1. The ALJ was not required to give any special significance to Dr. Johnston's opinion.**

Plaintiff incorrectly asserts that the revised regulations for evaluating evidence implement more stringent requirements and argues that the ALJ should have deferred to Dr. Johnston's medical opinion.[4] (Pl. Br. 4-10). Importantly, the Commissioner chose not to retain the "treating source rule" that could require deference to treating source opinion evidence. 82 Fed. Reg. at 5853. As the agency explained, since adoption of the "treating source rule" in 1991, healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion. Id. While the ALJ must articulate how he considered the medical opinions, there are no particularized procedures that the ALJ must follow when considering opinions from treating sources (e.g., requirement that adjudicators must "give good reasons" for the weight given a

---

[4] In Reply, Plaintiff argues that Defendant has mischaracterized Plaintiff's argument. Plaintiff contends that she is arguing that the ALJ failed to articulate how the supportability and consistency factors were considered in evaluating the persuasiveness of Dr. Johnston's opinion pursuant to 20 C.F.R. § 404.1520c(a) and (b)(1). Plaintiff contends that Defendant's argument does nothing to address the ALJ's lack of proper analysis or reference to specific findings to support his conclusion that Dr. Johnston's limitations opinion was not supported by or consistent with the record evidence. Plaintiff contends that the ALJ's conclusory "analysis and general citation to the longitudinal record as a whole is insufficient so as to allow meaningful review of his decision and is contrary to the articulation standards of the new Regulations." As Defendant notes, however, the Court has declined to adopt a fragmented approach of reviewing the ALJ's decision in favor of considering the ALJ's decision holistically. See Bramblett v. Colvin, 2:14-CV-00011-RLV, 2016 WL 1249297, at *5-*6 (W.D.N.C. Mar. 30, 2016). Here, the ALJ's statements sufficiently explain how he considered the supportability and consistency factors when evaluating Dr. Johnston's opinion.

treating source opinion). Cf. 20 C.F.R. § 404.1527(c)(2) (2016) and 20 C.F.R. § 404.1527(c)(2) (2017) with 20 C.F.R. § 404.1520c(b) (2017).

Although Plaintiff takes issue with the ALJ's explanation, she ultimately concedes that the ALJ did provide his rationale. (Pl. Br. 5–6). When crediting Dr. Johnston's opinion that Plaintiff could perform a range of light work and rejecting the remainder of her opinion as unpersuasive, the ALJ explained, in summary, that the longitudinal medical records, including Dr. Johnston's own treating notes, did not support her assessment. The ALJ also explained, in summary, that diagnostic testing did not support Dr. Johnston's assessment. Indeed, as the ALJ discussed before evaluating Dr. Johnston's opinion, the evidence does not show significantly decreased motor strength or muscle tone, and there is no evidence of muscle atrophy, all of which are indicators of debilitating arthritic pain or trauma. (Tr. 25–26, 367, 390–91, 415–22, 444–54, 494–95; see also Tr. 16–20 (discussing longitudinal medical records from various providers and the consultative examiner)).

The ALJ also noted the absence of significant gait abnormalities upon examination, although she ambulated slowly on one occasion after reporting increased back pain for one week from heavy lifting while working at the spa. (Tr. 17–20, 367, 390–91, 415–22, 494–95, 539). The ALJ also noted that during a January 2018 consultative examination, Plaintiff "had a normal gait, normal ability to stand on heels and toes, normal ability to squat and rise to tandem stand … and there [was] no need for [Plaintiff] to utilize any type of assistive device," although she had some difficulty walking on her heels and toes and could not fully squat without assistance during a subsequent 2018 consultative examination. (Tr. 18, 25, 415–21, 444–54). As for Plaintiff's manipulative abilities, the ALJ observed that during a January 2018 consultative examination Plaintiff's "grip strength, ability to grasp, ability to raise arms above the head and to perform

dexterous movements of the hands [was] bilaterally symmetrical and non-impaired." (Tr. 18, 25, 26, 420–21). The ALJ similarly observed the absence of manipulative abnormalities during a subsequent consultative examination performed by Dr. Burgess, who reported non-tender joints in the hands and arms, no signs of atrophy, normal grip strength and range of motion, and the ability to write and pick up coins without difficulty. (Tr. 18–19, 25, 28, 444–54).

Additionally, the ALJ explained that Plaintiff's imaging studies of her hips, back, and knees did not show significant abnormalities. (Tr. 26). Specifically, the ALJ observed that Plaintiff's imaging studies showed "minimal [] age appropriate facet arthropathy" in the low back, "mild disc space narrowing" in the mid-back in the absence of acute findings, "mild bilateral hip osteoarthritis," "mild" right knee osteoarthritis in the absence of acute findings, and no significant findings in the left knee. (Tr. 26, 412, 423–24, 441–42, 528; see also Tr. 17–18, 20); Pl. Br. 7 (reciting findings from imaging studies that were discussed in the ALJ's decision)).

The ALJ acknowledged, however, that Plaintiff exhibited some manifestations of pain, such as limited range of motion, tenderness, and knee joint crepitus on occasion, which he accounted for when determining her RFC. (Tr. 16–20, 390–91, 494–95, 539; Pl. Br. 8–9 (reciting cumulative evidence showing objective findings of pain upon examination addressed in the ALJ's decision)). Considering relatively benign findings in the longitudinal medical records, the ALJ explained "[t]here is no indication that her gait has been disturbed by a knee[] or…back impairment. Also there is no diagnostic evidence of a disabling knee impairment." (Tr. 26). The ALJ also acknowledged Plaintiff's testimony that she can only sit, stand, and walk for brief periods of time and explained "[w]hile there is no basis…for such restrictive exertional limitations, the RFC allows [Plaintiff] to alternate sitting and standing positions every 30 minutes." (Tr. 26).

As Plaintiff admits, the record does not establish an underlying diagnosis of fibromyalgia or other pain syndrome that may heighten her sensitivity to pain and discomfort. (Tr. 24–25, Pl. Br. 7). Cf. Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 96–98 (4th Cir. 2020) (highlighting the unique characteristics of fibromyalgia "a disease whose 'symptoms are entirely subjective,'" with the exception of trigger point evidence). While it is true that Dr. Johnston and other medical providers documented Plaintiff's complaints of pain, which the ALJ acknowledged, notations of Plaintiff's subjective complaints do not "transform" her complaints into "clinical evidence…. There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain.'" (Tr. 16–20; Pl. Br. 8–9); Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996). Indeed, the Fourth Circuit held that it is proper for an ALJ to reject a physician's opinion where the physician's own treatment notes do not confirm a determination of "disability," the record contains benign findings, and there is evidence of significant daily activities. Id.[5]

Here, the ALJ observed that Plaintiff worked at a spa and was seeking alternative employment, including becoming certified to care for her mother-in-law, during the relevant period. (Tr. 16–17, 23, 25). The ALJ acknowledged Plaintiff's testimony that she "normally lifted about 20 to 50 pounds" of laundry while working at the spa and that she quit this job because "the lifting and bending became too much." (Tr. 23, 25). Nevertheless, the ALJ noted and acknowledged that Plaintiff demonstrated some manifestations of pain upon examination. (See supra at pp. 9-10). Accordingly, the ALJ limited Plaintiff to a range of light work, which requires lifting no more than 10 pounds frequently and 20 pounds occasionally, with postural limitations in

---

[5] It is well established in the Fourth Circuit that an ALJ "may…discount medical opinions for excessive reliance on a claimant's subjective statements." Thompson v. Berryhill, No. 4:18-CV133-FL, 2019 WL 2980030, at *6 (E.D.N.C. Apr. 22, 2019) (citing Mastro v. Apfel, 270 F.3d 171, 178) (4th Cir. 2001)), report and recommendation adopted sub nom. Thompson v. Saul, No. 4:18-CV-133-FL, 2019 WL 2932736 (E.D.N.C. July 8, 2019).

addition to the sit/stand option. (Tr. 22, 25–27). 20 C.F.R. § 404.1567(b). The ALJ also precluded concentrated exposure to temperature extremes, which are known to aggravate arthritic pain. (Tr. 22). Moreover, the ALJ acknowledged Plaintiff's reports of financial difficulties, but found that her prescribed conservative treatment course and maintenance did not suggest disabling symptoms and limitations. (Tr. 20, 26–27). See 20 C.F.R. § 404.1529(c)(3)(v). Importantly, the Fourth Circuit's decisions in Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) and Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), do not prohibit ALJs from considering a lack of medical treatment as a factor in disability determinations. Buckley v. Comm'r of Soc. Sec. Admin., No. 1:14-CV-00124-TLW, 2015 WL 3536622 (D.S.C. June 4, 2015); accord Campbell v. Colvin, 2014 WL 6680369, at *5; Riegel v. Colvin, No. 7:12–CV–00526, 2014 WL 462525, at *8 (W.D. Va. Feb. 5, 2014) ("Lovejoy and its progeny do not in any way preclude the ALJ from considering inconsistencies in the record that undermine Riegel's credibility."). Although a claimant cannot be penalized for failing to seek treatment he or she cannot afford, an ALJ is permitted to consider inconsistencies in the record that undermine a claimant's allegations. Id.

Here, as noted, the ALJ observed minimal physical examination and diagnostic findings, significant work activity, and maintenance with over-the-counter medication and pain management. Symptoms that can be reasonably controlled by medication or treatment are not disabling. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ also observed that, despite Plaintiff's complaints, no provider suggested that her impairments required treatment beyond pain management, such as surgical intervention, as one would expect with end-stage arthritis or a debilitating back impairment. (Tr. 27). See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (the inconsistency between allegations and treatment sought is probative). An ALJ can

consider a lack of medical treatment as a factor in disability determinations. 20 C.F.R. §§ 404.1529(c)(3)(iii)–(vii); see also 20 C.F.R. § 404.1530.

Although Plaintiff disagrees with the ALJ's observations, the ALJ is permitted to draw meaningful inferences from the facts. See 20 C.F.R. § 404.1520b; Gatson v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at*6 (W.D.N.C. 2018) (stating that it is not improper for the ALJ to consider the absence of evidence when formulating the RFC); accord Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (Commissioner is entitled to rely not only on what the record says, but also on what the record does not say). Thus, Plaintiff fails to demonstrate how the ALJ's evaluation of Dr. Johnston's opinion is improper or otherwise does not comport with the applicable law in this case.

**2. The ALJ's evaluation of Dr. Burgess's opinion is consistent with the RFC assessment.**

The ALJ found Dr. Burgess's physical limitations persuasive, explaining, in summary, that Dr. Burgess's consultative examination findings, which were previously detailed in the ALJ's decision, were consistent with and supported by the record evidence. (Tr. 27; see Tr. 16-20, 25–27). Contrary to Plaintiff's assertion, Dr. Burgess's April 2018 consultative examination findings and contemporaneous medical opinion do not support the extreme limitations indicated by Plaintiff's primary care physician, Dr. Johnston. (Tr. 444–54; compare Tr. 437–38; see Tr. 18–20, 25, 28; Pl. Br. 8). Notably, Dr. Burgess indicated that Plaintiff's abilities were "mildly" impaired and "intermittently more moderately" impaired due to the physical findings described in his report. (Tr. 25, 448) (emphasis added). As the ALJ discussed, aside from "some difficulty walking on heels and toes" and fully squatting without assistance, Plaintiff's physical examination findings

were unremarkable, showing normal gait, strength, range of motion, reflexes, and sensation in the absence of tenderness. (Tr. 19, 444–54).

Likewise, Plaintiff's assertion that the ALJ did not explain why communicative limitations are absent from the RFC is incorrect. (Pl. Br. 10–12). The ALJ specifically found that Plaintiff had no limitation understanding, remembering, and applying information or interacting with others, noting her function report indicating that she is regularly social at work and outside of work, she has no problem paying attention and finishing tasks, and her conditions do not affect her hearing and talking abilities. (Tr. 20–21, 229–30). Accordingly, the ALJ's decision explains why Plaintiffs combined impairments do not warrant communicative limitations pertaining to her ability to hear and speak. In any event, this Court has consistently held that "where an ALJ gives a medical opinion 'great weight,' [the ALJ]is not obliged to adopt the opinion in its entirety or 'give [it] controlling weight'" when examining this issue under the prior regulations. Clark v. Berryhill, No. 5:17-CV-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018) (citing Hughes v. Berryhill, No. 1:16-CV-00253-MOC, 2017 WL 1190922, at *3 (W.D.N.C. Mar. 29, 2017). The same logic holds when an ALJ finds a medical opinion or prior administrative medical finding "persuasive" under the revised regulations. Thus, Plaintiff similarly fails to demonstrate how the ALJ's evaluation of Dr. Burgess's opinion is improper or otherwise does not comport with the applicable law in this case.

**B. Plaintiff's Contention that Substantial Evidence Does Not Support the ALJ's RFC Finding**

As her next assignment of error, Plaintiff contends that substantial evidence does not support the RFC because the ALJ did not adopt certain limitations indicated in the opinions of Johnston and Burgess. For the following reasons, the Court disagrees.

The RFC is the most a claimant can still do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff asserts that, by rejecting the limitations offered by certain medical sources, the ALJ failed to account for Plaintiff's pain in the RFC finding. In turn, Plaintiff argues that the ALJ failed to explain why Plaintiff's complaints of pain do not warrant the limitations indicated by certain medical sources. Notably, this Court has held where an ALJ includes a specific restriction that facially addresses a relevant functional limitation, absent some type of evidentiary showing by the claimant, no further explanation by the ALJ is necessary. Everett v. Berryhill, No. 3:19-cv-00246-GCM, 2020 WL 6567141, at *4 (W.D.N.C. Nov. 9, 2020) (collecting cases). Plaintiff fails to identify any material evidence or conflicts the ALJ's analysis does not address. See Funderburk v. Saul, 3:20-CV-00334-FDW, 2021 WL 1721871, at *4 (W.D.N.C. Apr. 30, 2021) (distinguishing Arakas, 983 F.3d at 100); see also Walker v. Saul, 2021 WL 342570, at *10 (S.D. Va. Jan. 6, 2021) (distinguishing Arakas where the plaintiff failed to identify any material conflicting evidence or misstatement of the evidence, but rather invites the court to reweigh the evidence because he disagrees with the ALJ's decision). Nevertheless, the ALJ provided the requisite analysis and support when evaluating Plaintiff's symptoms, the opinion evidence, and prior administrative medical findings to determine the RFC. (Tr. 16–28).

When attempting to undermine the ALJ's exclusive duty to weigh the evidence and determine the RFC, Plaintiff seemingly ignores that she has the burden to prove the extent of her limitations; "it is not the ALJ's burden to prove a lack of limitations." Durham v. Saul, No. 3:20-cv-00295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) (citing Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)). A mere diagnosis of a condition is not enough to prove disability. "There must be a showing of related functional loss." See Gross,

785 F.2d at 1165) (citing Sitar v. Schweiker, 671 F.2d 19, 20–21 (1st Cir. 1982). Although Plaintiff maintains that the evidence weighs against the ALJ's findings, the ALJ and only the ALJ is responsible for evaluating a claimant's symptoms and resolving conflicts in the evidence. 20 C.F.R. § 405.1545(a)(3); Hays, 907 F.2d at 1456.

Here, the ALJ found the record established severe impairments that could cause Plaintiff's alleged symptoms but concluded the record did not support her allegations concerning the intensity, persistence, and limiting effects of those symptoms. (Tr. 24). See Craig, 76 F.3d at 594; Mickles, 29 F.3d at 926 ("This threshold test does not, as the regulation is careful to emphasize, entail a determination of the 'intensity, persistence, or functionally limiting effects of the claimant's asserted [symptoms]."). In doing so, the ALJ carefully examined the medical evidence and accounted for limitations he found to be supported by such evidence. (Tr. 16–28). See Craig, 76 F.3d at 595 (a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence). When determining the extent to which the evidence supported Plaintiff's pain allegations, the ALJ noted certain abnormal findings and concurrently weighed these findings against evidence that did not suggest disabling symptoms and limitations. As discussed, the ALJ observed that Plaintiff had some manifestations of pain, but that she otherwise had benign examination and diagnostic findings, maintained with conservative treatment, and was able to engage in work activity.

In sum, the ALJ properly determined Plaintiff's RFC. The ALJ accounted for Plaintiff's subjective complaints of pain by limiting her to a range of light work with a sit/stand option, postural limitations, and no concentrated exposure to temperature extremes. (Tr. 22). Where the ALJ crafts evidence-based assessments of a claimant's abilities and limitations, the substantial evidence standard compels deference. Biestek, 139 S. Ct. at 1151–54; see also Shively v. Heckler,

739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."); Bishop v. Comm'r of Social Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (where the court refused to overturn an ALJ's finding regarding subjective allegations absent "exceptional circumstances").

To the extent that Plaintiff asks the ALJ to prove she could perform the work related activities described in the RFC, she misconstrues the law. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Importantly, this Court has acknowledged:

> [a]n RFC does not identify limitations that would result in a pain-free workday. See Ferrante v. Bowen, 869 F.2d 593, 1989 WL 14408, at *4 (4th Cir. 1989) ("disability requires more than mere inability to work without pain"). Provided that an RFC would allow the claimant to sustain the relevant work for "8 hours a day, for 5 days a week, or an equivalent work schedule," Hines [v. Barnhart], 453 F.3d [559,] 562 [(4th Cir. 2006)], (quoting SSR 96-8p), pain or discomfort could still be present.

Allison v. Colvin, No. 5:16-CV-12-RJC-DSC, 2016 WL 11268487, at *4 (W.D.N.C. Aug. 30, 2016), report and recommendation adopted, No. 5:16-CV-00012-RJC-DSC, 2017 WL 445231 (W.D.N.C. Jan. 30, 2017). Notably, the ALJ did not find that Plaintiff was without limitation; rather, the ALJ found that her impairments were not disabling. The ALJ's third hypothetical, which he adopted as Plaintiff's RFC, was sufficient because it "fairly set out all of Plaintiff's impairments" based on his proper assessment. (Tr. 22, 68–69). Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); accord Cole v. Berryhill, 1:17CV57-GCM, 2018 WL893769, at *5–*6 (W.D.N.C. Feb. 14, 2018). As this Court has held:

> [a]n ALJ is afforded "great latitude in posing hypothetical questions," Koonce v. Apfel, No. 98-114, 1999 WL 7864, at *5 (4th Cir. 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's

> limitations. See Copeland v. Bowen, 861 F.2d 536, 540–41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

Cole, 2018 WL893769, at *5. Accordingly, the ALJ properly accounted for Plaintiff's limitations in the RFC and the hypothetical presented to the vocational expert. When reviewing the ALJ's decision under the proper standard, this Court is not "left to guess" how the ALJ considered Plaintiff's impairments because the ALJ's symptom evaluation and corresponding RFC assessment explains his reasoning. Cf. Mascio v. Colvin, 789 F.3d 632 780 F.3d 632, 636–38 (4th Cir. 2015) (remanding the ALJ's decision where the ALJ "ignor[ed] (without explanation) [the claimant's] moderate limitation in concentration, persistence, or pace" resulting in an unexplained inconsistency between the step three findings and the RFC assessment, which included no limitation related to those earlier findings). The ALJ "neither merely gave summary conclusions devoid of analysis, nor simply cited to evidence he deemed was consistent." Childress v. Berryhill, No. 3:18-CV-00062-FDW, 2018 WL 5045220, at *7 (W.D.N.C. Oct. 17, 2018) (distinguishing Wood v. Berryhill, 888 F.3d 686, 692, 694 (4th Cir. 2018)). Instead, the ALJ's well-reasoned analysis "build[s] an accurate and logical bridge from the evidence to the conclusion" and reflects a holistic view of the evidentiary record. Monroe, 826 F.3d at 189 (internal citation and quotation omitted).

### VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for

Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 12) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: October 28, 2021

Max O. Cogburn Jr.
United States District Judge